

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### No. PD-0123-10

**CHRIS JOSHUA MEADOUX, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FOURTH COURT OF APPEALS
### BEXAR COUNTY

**HOLCOMB, J., delivered the opinion of the Court, in which KELLER, P.J., and PRICE, WOMACK, KEASLER, HERVEY, and COCHRAN, JJ., joined. MEYERS, J., filed a dissenting opinion, in which JOHNSON, J., joined.**

The court of appeals held that the Eighth Amendment did not bar Chris Joshua Meadoux's

sentence of life without parole for a capital crime that he committed at the age of sixteen. We affirm.

On October 3, 2007, a Bexar County grand jury returned an indictment charging Meadoux

with capital murder under Texas Penal Code § 19.03(a)(2) and (a)(7).[1] On August 4, 2008, the State

---

[1] Meadoux, who was sixteen at the time of the offense, was certified to stand trial as an adult. *See* Tex. Fam. Code § 54.02.

brought Meadoux to trial under the indictment. During the guilt stage of trial, the State presented evidence that, on January 24, 2007, in Bexar County, Meadoux murdered Luis Martinez and Johnny You during a single criminal transaction and then tried to cover up his crime by burning the victims' bodies in a house fire. At the conclusion of the guilt stage, the jury found Meadoux guilty as charged in the indictment. The trial court, in accordance with Texas Penal Code §§ 8.07(c) and 12.31(a), assessed Meadoux's punishment at imprisonment for life without the possibility of parole.[2]

On direct appeal, Meadoux argued, for the first time, that the prohibition on cruel and unusual punishments contained in the Eighth Amendment barred the State from subjecting a juvenile capital offender to imprisonment for life without parole.[3] Meadoux argued, in effect, that Texas Penal Code § 12.31(a), as it was then written, was unconstitutional as applied to juveniles. *See* footnote two, *supra*. More specifically, Meadoux argued that: (1) juveniles were less morally culpable (i.e., less blameworthy) for their crimes than are adult offenders; (2) life imprisonment

---

[2]  Texas Penal Code § 8.07(c) provides: "No person may, in any case, be punished by death for an offense committed while the person was younger than 18 years." At the time of Meadoux's offense, Texas Penal Code § 12.31(a) provided in relevant part: "An individual adjudged guilty of a capital felony in a case in which the state does not seek the death penalty shall be punished by imprisonment in the institutional division for life without parole."

In 2009 the Legislature amended § 12.31(a) to provide in relevant part: "An individual adjudged guilty of a capital felony in a case in which the state does not seek the death penalty shall be punished by imprisonment in the Texas Department of Criminal Justice for life [i.e., with parole], if the individual's case was transferred to the court under Section 54.02, Family Code." The Legislature provided that the amendment of § 12.31(a) "applie[d] only to an offense committed on or after [September 1, 2009]."

[3]  Meadoux cited *Holberg v. State*, 38 S.W.3d 137, 139 n. 7 (Tex.Crim.App. 2000), for the proposition that he could raise the validity of the Texas capital sentencing scheme for the first time on appeal. In *Holberg* we relied upon *Rabb v. State*, 730 S.W.2d 751, 752 (Tex.Crim.App. 1987), for the rule that questions involving the validity of a statute on which a defendant's *conviction* was based should be addressed by appellate courts even when such issues were raised for the first time on appeal. The *Rabb* rule was overruled in *Karenev v. State*, 281 S.W.3d 428, 434 (Tex.Crim.App. 2009).

without the possibility of parole did "not serve as a measurable deterrent [for] juveniles"; and (3) the Legislature's recent amendment of Texas Penal Code § 12.31(a) to provide for life imprisonment *with* the possibility of parole for juvenile capital offenders "signifie[d] that the evolving standard of decency, at least in Texas, forb[ade] the categorical assessment of [life without parole] for juvenile capital offenders." For a remedy, Meadoux asked that the case be remanded to the trial court "for sentencing that takes into consideration the particular circumstances in this case."

In its response brief, the State argued simply that Meadoux did "not provide any persuasive authority holding that a juvenile may not be constitutionally sentenced to imprisonment for life [without parole]." Notably, the State did not challenge Meadoux's right to argue his Eighth Amendment claim for the first time on appeal.

The court of appeals, with little substantive analysis, rejected Meadoux's Eighth Amendment claim and affirmed the trial court's judgment. *Meadoux v. State*, 307 S.W.3d 401, 415-17 (Tex.App.–San Antonio 2009). We granted Meadoux's petition for discretionary review in order to determine whether the court of appeals erred in rejecting his Eighth Amendment claim.[4] *See* Tex. R. App. Proc. 66.3(b).

In his brief to this Court, Meadoux reiterates the arguments that he made below and, in addition, argues that: (1) "juveniles are unfinished creatures whom we cannot label as irretrievably depraved"; (2) "placing [a juvenile] in prison for life without parole enacts disproportionately severe retribution and inflicts needless pain and suffering"; (3) "ensuring public safety can be met with life sentences and the parole system"; and (4) although "the majority of states have available juvenile

---

[4] Meadoux's sole ground for review reads as follows: "The Court of Appeals erred in finding that in light of recent Supreme Court jurisprudence and statutory changes a juvenile's sentence of life without parole was still constitutional."

life without parole," "the Eighth Amendment is not a 'constitutional Gallup poll' designed to mandate whatever the day's consensus is."

In its response brief, the State argues that: (1) the Eighth Amendment "contains no textual or jurisprudential basis for a categorical ban on life sentences without parole for juveniles of a certain age who commit heinous, violent murders"; (2) "a majority of [American] jurisdictions have statutes allowing life sentences without parole for juvenile offenders"; and (3) "[t]he Eighth Amendment allows . . . legislatures to make judgments to protect public safety requiring incapacitating juvenile offenders who have been convicted of [capital] murder."[5]

The Eighth Amendment to the Constitution of the United States provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." This provision was made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 666-67 (1962). In determining whether a particular punishment is cruel and unusual, "courts must look beyond historical conceptions to 'the evolving standards of decency that mark the progress of a maturing society.'" *Graham v. Florida*, 130 S.Ct. 2011, 2021 (2010) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality opinion)). "This is because 'the standard of extreme cruelty is not merely descriptive, but necessarily embodies a moral judgment. The standard itself remains the same, but its applicability must change as the

---

[5] The State, citing Texas Rule of Appellate Procedure 33.1, also argues that Meadoux failed to preserve his Eighth Amendment claim for appellate review. However, the State failed to make this argument below, the court of appeals did not address it, and we did not grant review to consider it. Although it is true that "issues of error preservation are systemic in first-tier review courts," *Menefee v. State*, 287 S.W.3d 9, 18 (Tex.Crim.App. 2009), that means only that a court of appeals may not *reverse* a judgment of conviction without first addressing any issue of error preservation. Here, the court of appeals *affirmed* the trial court's judgment of conviction. Given our disposition of the case, there is no need for us to address error preservation or to remand the case to the court of appeals for it to do so.

basic mores of society change.'" *Kennedy v. Louisiana*, 554 U.S. 407, ___, 128 S.Ct. 2641, 2649 (2008) (quoting *Furman v. Georgia*, 408 U.S. 238, 382 (1972) (Burger, C.J., dissenting)).[6]

In accordance with contemporary national standards of decency, the Eighth Amendment prohibits the imposition of punishments that are inherently barbaric or grossly disproportionate to the offense. *Graham*, 130 S.Ct. at 2021. Meadoux's argument, in effect, is that life without parole is a grossly disproportionate punishment when assessed against a juvenile capital offender. In the parlance of the United States Supreme Court, Meadoux's argument is "a categorical challenge to a term-of-years sentence." *Id.* at 2022.

When faced with such a categorical challenge, the judiciary, in determining whether the punishment at issue is grossly disproportionate to the offense, must consider: (1) whether there is a national consensus against imposing the punishment for the offense; (2) the moral culpability of the offenders at issue in light of their crimes and characteristics; (3) the severity of the punishment; and (4) whether the punishment serves legitimate penological goals. *Id.* at 2022 & 2026.

*National Consensus.* The best evidence of a national consensus with respect to the appropriateness of a particular punishment for a particular offense is the legislation enacted by the nation's legislatures. *Atkins v. Virginia*, 536 U.S. 304, 312 (2002). "Actual sentencing practices are [also] an important part of [a court's] inquiry into consensus." *Graham*, 130 S.Ct. at 2023.

Meadoux concedes that the majority of states have available, in their penal statutes, life imprisonment without the possibility of parole for juvenile homicide offenders, and he has offered

---

[6] "Society changes. Knowledge accumulates. We learn, sometimes, from our mistakes. Punishments that did not seem cruel and unusual at one time may, in the light of reason and experience, be found cruel and unusual at a later time; unless we are to abandon the moral commitment embodied in the Eighth Amendment, proportionality review must never become effectively obsolete." *Graham v. Florida*, 130 S.Ct. 2011, 2036 (2010) (Stevens, J., concurring).

no evidence indicating that sentencers in those states are actually moving away from assessing such punishment to such offenders.[7] He points to the Texas Legislature's recent amendment of Texas Penal Code § 12.31(a), requiring life imprisonment *with* the possibility of parole for juvenile capital offenders, as evidence of this state's contemporary standards of decency. But such evidence does not prove a national consensus with respect to the appropriateness of life without parole for juvenile capital offenders. We also note that the Legislature specified that the amendment of § 12.31(a) was not to be applied retroactively, suggesting that the Legislature did not think it was actually cruel and unusual to impose life without parole on juvenile capital offenders.

In short, Meadoux has not established that there is presently a national consensus against imposing life without parole on a juvenile for the offense of capital murder.

*Moral Culpability*. In *Graham*, 130 S.Ct. at 2026, the Supreme Court stated:

> "*Roper* [*v. Simmons*, 543 U.S. 551 (2005),] established that because juveniles have lessened culpability they are less deserving of the most severe punishments. As compared to adults, juveniles have a lack of maturity and an underdeveloped sense of responsibility; they are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure; and their characters are not as well formed. These salient characteristics mean that it is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption. Accordingly, juvenile offenders cannot with reliability be classified among the worst offenders. A juvenile is not absolved of responsibility for his actions, but his transgression is not as morally reprehensible as that of an adult." (Citations and internal quotation marks omitted.)

On the other hand, the Supreme Court also recognized in *Graham* that there is a moral line between murder – and, we would add, capital murder – and other serious violent offenses against

---

[7] Meadoux, as the party challenging Texas Penal Code § 12.31(a) as it was written at the time of his offense, has the burden of establishing its unconstitutionality. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex.Crim.App. 2002).

the individual. *Graham*, 130 S.Ct. at 2027. Defendants who kill are categorically more deserving of the most serious forms of punishment than are defendants who do not kill, intend to kill, or foresee that life will be taken. *Ibid*. Serious nonhomicide crimes may be devastating in their harm, but in terms of moral depravity and of the injury to the person and to society, they cannot be compared to murder, especially capital murder, in their severity and irrevocability. *Ibid*.

It follows that a juvenile capital offender's moral culpability is still great even if it is diminished as compared to that of an adult capital offender.

*The Punishment*. Life imprisonment without the possibility of parole is the second most severe penalty permitted by our law. In *Graham*, 130 S.Ct. at 2027-28, the Supreme Court stated:

> "[L]ife without parole sentences share some characteristics with death sentences that are shared by no other sentences. The State does not execute the offender sentenced to life without parole, but the sentence alters the offender's life by a forfeiture that is irrevocable. It deprives the convict of the most basic liberties without giving hope of restoration, except perhaps by executive clemency – the remote possibility of which does not mitigate the harshness of the sentence.
>
> * * *
>
> "Life without parole is an especially harsh punishment for a juvenile. Under this sentence a juvenile offender will on average serve more years and a greater percentage of his life in prison than an adult offender. A 16-year-old and a 75-year-old each sentenced to life without parole receive the same punishment in name only. This reality cannot be ignored." (Citations omitted.)

*Penological Goals*. Four goals of penal sanctions have been recognized as legitimate: retribution, deterrence, incapacitation, and rehabilitation. *Id*. at 2028. "A sentence lacking any legitimate penological justification is by its nature disproportionate to the offense." *Ibid*.

Society is entitled to impose severe sanctions on a juvenile capital offender "to express its condemnation of the crime and to seek restoration of the moral imbalance caused by the offense." *Ibid*. But "[t]he heart of the retribution rationale is that a criminal sentence must be directly related

to the personal culpability of the criminal offender." *Tison v. Arizona*, 481 U.S. 137, 149 (1987). So, "[w]hether viewed as an attempt to express the community's moral outrage or as an attempt to right the balance for the wrong to the victim, the case for retribution is not as strong with a minor as with an adult." *Roper*, 543 U.S. at 571. Nevertheless, in the case of a juvenile capital offender, the case for retribution is still strong.

Deterrence, on the other hand, is not served by imposing life without parole, as opposed to imposing life with parole, on a juvenile capital offender. "[T]he same characteristics that render juveniles less culpable than adults suggest . . . that juveniles will be less susceptible to deterrence." *Ibid*. "Because juveniles' lack of maturity and underdeveloped sense of responsibility often result in impetuous and ill-considered actions and decisions, they are less likely to take a possible punishment into consideration when making decisions." *Graham*, 130 S.Ct. at 2028-29 (citation, internal quotation marks, and some punctuation omitted). To the extent that any punishment has a deterrent effect on a teenager, the punishment of life with parole is itself a severe sanction, especially for a youth.

Regarding the penological goal of incapacitation, Meadoux argues that public safety can be ensured "with life sentences and the parole system." He argues specifically that "[t]ime-tested guidelines are already in place in Texas to assess whether an applicant for parole is too risky to be released back into civil society." Nevertheless, we believe that, given the enormity of the crimes committed by juvenile capital offenders, the Legislature could reasonably conclude that such offenders are incorrigible or probably so, and that the only prudent course of action is to separate them from society forever.

As for rehabilitation, "a sentence of life imprisonment without parole . . . cannot be justified

by [it]." *Id*. at 2029-30. "The penalty forswears altogether the rehabilitative ideal. By denying the defendant the right to reenter the community, the State makes an irrevocable judgment about that person's value and place in society." *Id*. at 2030.

We can summarize the preceding discussion as follows: (1) Meadoux has not established that there is presently a national consensus against imposing life without parole on a juvenile for the offense of capital murder. (2) A juvenile capital offender's moral culpability, even if diminished as compared to that of an adult capital offender, is still great. (3) Life without parole is a severe sentence, especially for a juvenile. (4) Life without parole for juvenile capital offenders finds justification in the penological goals of retribution and incapacitation but not in the goals of deterrence or rehabilitation. Considering and balancing these four factors together, we conclude that Meadoux has not carried his burden of showing that, according to contemporary national standards of decency, the punishment of life without parole for juvenile capital offenders is grossly disproportionate to the offense.

We overrule Meadoux's ground for review and affirm the judgment of the court of appeals.

DELIVERED NOVEMBER 17, 2010

PUBLISH