Opinion issued January 27, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00976-CR

———————————

Michael Stinson,
Appellant

V.

The State of Texas, Appellee



 



 

On
Appeal from the 263rd District Court

Harris
County, Texas



Trial Court Case No. 1170914

 



 

MEMORANDUM OPINION

Appellant, Michael Stinson, was charged
by indictment with engaging in organized criminal activity to make a false
statement to obtain property or credit.[1]  Appellant pleaded not guilty.  A jury found appellant guilty of the
lesser-included offense of making a false statement to obtain property or
credit.[2]  The trial court sentenced appellant to five
years’ confinement, suspended the sentence, placed appellant on community
supervision for five years, and assessed a $1,000 fine with 300 hours of
community service.  In two points of error,
appellant challenges the sufficiency of the evidence to support a finding by
the jury of “any agreement with Appellant or by Appellant to engage in a
continuing course of criminal activity.”

We affirm.

                                                                                                                                                                
Background

Michael Macomber was a real estate agent in December
2005.  During his time as a real estate
agent, he saw other people make significant profits on the sale of high-end
homes.  After making some inquiries he
was eventually introduced to and entered into a deal with Pamela Anderson, Marc
Ariza, Freda Ariza, and Arthur Monroe. 
Under their deal, they would obtain a certain home, located in Spring,
Texas, appraised at a high value.[3]  Monroe, the owner and builder of the home,
would sell the property at the inflated price to Macomber, then Monroe would
distribute a portion of the sales proceeds to Macomber, Anderson, and the
Arizas afterwards.  This scheme was known
as obtaining “untapped equity” from the property.

Macomber was instructed to hire appellant to do the
appraisal on the property.  Macomber paid
appellant $500 to perform the appraisal, a customary price for such appraisals.  In January 2006, appellant performed the
appraisal and issued an appraisal report, determining the property to be worth
$1,050,000.

Subsequently, Macomber purchased the property for $980,000
with two banks loans.  After the sale,
Monroe gave appellant $171,007.00. 
Appellant then distributed some of that money to Anderson and the
Arizas.

Macomber had not been allowed inside the house prior to
the sale.  Some time after the sale,
Macomber entered the house and discovered that significant portions of the
house remained unfinished.  The house had
an elevator shaft, but no elevator.  One
room did not have any flooring installed. 
The rooms that did have completed flooring contained mismatched
carpeting.  The stairs, which were meant
to be carpeted, contained only unfinished wood. 
The space created for a refrigerator was not large enough to accommodate
a standard-sized refrigerator.  The
microwave was not installed in a safe or proper area.  The dishwasher, which had been installed in
an island in the kitchen, did not have enough space for the door to open
entirely, rendering it unusable.  Much of
the electrical work remained unfinished, including missing electrical sockets,
phone jacks, ceiling fans, and light fixtures. 
Additionally, electric permits were never issued for the property.

Outside the house, certain projects that Monroe stated
would be completed remained unfinished. 
What was meant to be a basketball and tennis court was only a slab of
concrete.  An area in the front of the
house had been prepared to hold a water fountain, but the fountain was never
installed.  The cement for the pool had
been poured, but the pool contained no drain, pumps, or any other kind of
plumbing.

Macomber also learned after the sale that the property was
the subject of a lawsuit in which Monroe was alleged to have stolen the design
of the house from another builder. 
Macomber was brought into that lawsuit.

After realizing the troubled state of the house and after
running out of money to pay the mortgage, Macomber elicited the help of a
friend to burn the property to the ground. 
Investigators determined the cause of the fire to be arson.  In the course of the investigation, Macomber
admitted to the untapped equity deal and the subsequent arson.  

In the course of the investigation, it was determined that
an appraisal had been performed on the property six months earlier and that the
appraisal had determined the property to be worth $755,000.  That appraisal also stated that the property
was an “over-improvement,” meaning that it was significantly larger than the
other properties around it; that the supply outweighed the demand in that
subdivision and market area; that the resale market had not been established in
the subdivision; and that, due to these other factors, the property was rated “high
risk.”

At trial, Delores Kraft-Longoria testified.  Kraft-Longoria is a director for enforcement
with the Texas Appraiser Licensing and Certification Board.  She testified that appellant’s appraising
license only authorized him to perform noncomplex appraisals on property valued
at less than $1,000,000.  A complex appraisal
is an appraisal of property that is fairly large and unique or that would
require a number of adjustments to compare to other properties.  Appellant appraised the property at over
$1,000,000.  Additionally, Kraft-Longoria
testified that the property in question required a complex appraisal.

Kraft-Longoria found a number of faults with appellant’s
appraisal.  Appellant did not identify
any of the problems with the construction of the home or of the other
improvements on the property, nor did appellant make any adjustments to the
value of the home for any of these problems. 
All of the properties that appellant used as comparison properties were
located on a golf course in the subdivision, but the subject property was not
on the golf course.  Being located next
to a golf course typically increases the value of a property, yet appellant did
not make any adjustments to reflect this disparity.  Because all of the properties on the golf
course were smaller than the subject property, appellant adjusted upwards the value
of the comparison properties.  This
adjustment further inflated the disparity in the value of the properties
located on the golf course.

Kraft-Longoria testified that the house on the subject
property was “overbuilt” for its neighborhood—that is, it was significantly
bigger than the homes around it.  She
testified that this diminished the overall value of the property and—along with
the fact that there were no permits for electricity—rendered the home
functionally obsolete.  Appellant did not
note these things or make any adjustments for them.

Kraft-Longoria testified that, in her opinion, appellant’s
appraisal was materially false and misleading. 
She further testified that the value of the property was overinflated by
between $200,000 and $400,000.

                                                                                                                                   
Sufficiency of the Evidence

In two points of error, appellant argues that the jury’s
verdict was wrong and unjust because there was insufficient evidence in the
record to support a finding of “any agreement with Appellant or by Appellant to
engage in a continuing course of criminal activity.”

A.              
Standard of Review

This Court reviews sufficiency-of-the-evidence challenges applying
the same standard of review, regardless of whether an appellant presents the
challenge as a legal or a factual sufficiency challenge.  See Ervin
v. State, No. 01–10–00054–CR, 2010 WL 4619329, at *2–4 (Tex. App.—Houston
[1st Dist.] Nov. 10, 2010, pet. filed) (construing majority holding of Brooks v. State, 323 S.W.3d 893, 912,
924–28 (Tex. Crim. App. 2010)).  This standard of review is the standard
enunciated in Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). 
See id.  Pursuant to this standard, evidence is
insufficient to support a conviction if, considering all the record evidence in
the light most favorable to the verdict, no rational fact finder could have
found that each essential element of the charged offense was proven beyond a
reasonable doubt.  See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; In re Winship, 397 U.S. 358, 361, 90 S. Ct.
1068, 1071 (1970); Laster v. State,
275 S.W.3d 512, 517 (Tex. Crim. App. 2009); Williams
v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  We can hold evidence to be insufficient under
the Jackson standard in two
circumstances: (1) the record contains no evidence, or merely a “modicum” of
evidence, probative of an element of the offense, or (2) the evidence
conclusively establishes a reasonable doubt.  See
Jackson, 443 U .S. at 314, 318 n.11, 320, 99 S. Ct. at 2786, 2789 n.11,
2789; see also Laster, 275 S.W.3d at
518; Williams, 235 S.W.3d at 750. 

The sufficiency-of-the-evidence
standard gives full play to the responsibility of the fact finder to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.  See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  An appellate court presumes that the fact
finder resolved any conflicts in the evidence in favor of the verdict and
defers to that resolution, provided that the resolution is rational.  See
Jackson, 443 U.S. at 326, 99 S. Ct. at 2793.  In viewing the record, direct and
circumstantial evidence are treated equally; circumstantial evidence is as
probative as direct evidence in establishing the guilt of an actor, and
circumstantial evidence alone can be sufficient to establish guilt.  Clayton,
235 S.W.3d at 778.  Finally, the
“cumulative force” of all the circumstantial evidence can be sufficient for a
jury to find the accused guilty beyond a reasonable doubt.  See
Powell v. State, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

B.              
Analysis

Appellant was charged with engaging in organized criminal
activity to make a false statement to obtain property or credit.  See
Tex. Penal Code Ann. § 71.02(a)(8)
(Vernon Supp. 2010).  The jury found
appellant guilty of the lesser-included offense of making a false statement to obtain
property or credit.  See Act of May 17, 2001, 77th Leg., R.S., ch. 1246, § 3, sec.
32.32, 2001 Tex. Gen. Laws 2936, 2937 (amended 2001) (current version at Tex. Penal Code Ann. § 32.32 (Vernon
Supp. 2010)).  Section 32.32 of the Texas
Penal Code—as that statute applied at the time of the commission of the offense[4]—provides:

(a)     For
purposes of this section, “credit” includes:

(1) a loan of money;

. . . .

(b)     A
person commits an offense if he intentionally or knowingly makes a materially
false or misleading written statement to obtain property or credit for himself
or another.

Id.  

Appellant’s argument that the State failed to prove that
there was “any agreement with Appellant or by Appellant to engage in a
continuing course of criminal activity” is irrelevant because it is not an
element of the offense of which he was found guilty.  The State bears the burden of proving each
element of an offense beyond a reasonable doubt.  Tex.
Penal Code Ann. § 2.01 (Vernon 2003).  In a sufficiency of the evidence review, we
determine whether there was sufficient evidence in the record for a rational
jury to find each element of the offense beyond a reasonable doubt.  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789. 
Because he has not challenged any element of the offense of which he was
found guilty, appellant has presented nothing for us to review.

Appellant was charged with engaging in organized criminal
activity to make a false statement to obtain property or credit, which required
the State to prove beyond a reasonable doubt—as the statute applies to this
case—that there was an agreement with one or more persons to engage in conduct
that would constitute the offense of making a false statement to obtain
property or credit.  See Tex. Penal Code Ann.
§ 71.02(a)(8) (Vernon Supp. 2010) (including as elements of offense
requirement that person commits or conspires to commit one of certain iterated
offenses, including making a false statement to obtain property or credit); see also Tex. Penal Code Ann. § 71.01(b) (Vernon 2003) (providing
that “conspires to commit” includes requirement of showing that person agrees
with one or more persons that they or one or more of them engage in conduct
that would constitute the offense).  The
jury, however, acquitted appellant of this offense.  Because he was acquitted of this offense,
jeopardy has attached and appellate review of the offense is not
available.  State v. Moreno, 294 S.W.3d 594, 598 (Tex. Crim. App. 2009).

At any rate, there is sufficient evidence in the record for
the jury to have found beyond a reasonable doubt every element of the offense
of making a false statement to obtain property or credit.  Appellant’s appraising license only
authorized him to perform noncomplex appraisals on property valued at less than
$1,000,000.  Appellant appraised the
property at over $1,000,000. 
Kraft-Longoria testified that the property in question required a
complex appraisal.

Appellant made adjustments in his appraisal that increased
the value of the subject property but did not make any adjustments that
decreased the value of the subject property despite the fact that numerous
factors were present that required a downward adjustment in the overall value
of the property.  Appellant did not
identify any of the problems with the construction of the home or of the other
improvements on the property, nor did appellant make any adjustments to the
value of the home for any of these problems. 
All of the properties appellant used as comparison properties were
located on the golf course in the subdivision, but the subject property was not
on the golf course.  Being located next
to a golf course typically raises the value of a property, yet appellant did
not make any adjustments to reflect this disparity.  Because all of the properties on the golf
course were smaller than the subject property, appellant adjusted upwards the
value of the comparison properties.  This
adjustment further inflated the disparity of the value of the properties
located on the golf course.

Kraft-Longoria testified that the house on the subject
property was “overbuilt” for its neighborhood—that is, it was significantly
bigger than the homes around it.  She
testified that this diminished the overall value of the property and—along with
the fact that there were no permits for electricity—rendered the home
functionally obsolete.  Appellant did not
note these things or make any adjustments for them.  

In contrast, the appraisal that had been performed six
months earlier on the same property did note similar problems with the size of
the house as well as with the subdivision in general.  That appraisal determined the property to be
worth $755,000.  That appraisal also
stated that the property was an “over-improvement,” meaning it was
significantly larger than the other properties around it; that the supply
outweighed the demand in that subdivision and market area; that the resale
market had not been established in the subdivision; and that, due to these
other factors, the property was rated high risk.

Kraft-Longoria testified that, in her opinion, appellant’s
appraisal was materially false and misleading. 
She further testified that the value of the property was overinflated by
between $200,000 and $400,000.

Appellant was paid by Macomber to perform the appraisal. The
report reflects that it was prepared for a business called Dana Capital, a loan
processing business, and it identifies Macomber’s wife as the borrower.  We hold there was sufficient evidence in the
record to support a finding by the jury that appellant intentionally or knowingly
made a materially false or misleading written statement to obtain property or
credit for another.  See Act of May 17, 2001, 77th Leg., R.S., ch. 1245, § 3, sec.
32.32, 2001 Tex. Gen. Laws 2934, 2935 (amended 2001).

We overrule appellant’s two points of error.

                                                                                                                                                                   
Conclusion

We affirm the judgment of the trial court.

 

                                                                   Laura
Carter Higley

                                                                   Justice


 

Panel consists of Justices Jennings, Higley, and Brown.

Do not publish.   Tex. R.
App. P. 47.2(b).











[1]           See Tex. Penal Code Ann. § 71.02(a)(8)
(Vernon Supp. 2010); Act of May 17, 2001, 77th Leg., R.S., ch. 1245, § 3, sec.
32.32, 2001 Tex. Gen. Laws 2934, 2935 (amended 2001) (current version at Tex. Penal Code Ann. § 32.32 (Vernon
Supp. 2010)).

 





[2]           See Act of May
17, 2001, 77th Leg., R.S., ch. 1245, § 3, sec. 32.32, 2001 Tex. Gen. Laws 2934,
2935 (amended 2001).

 





[3]           Originally the deal involved two properties, not one.  For reasons not relevant to this opinion,
however, the deal on the second property was never completed.





[4]           The offense occurred in January 2006.  The statute was amended in 2007, made
effective September 1, 2007 and again in 2009, made effective September 1,
2009.  Act of May 9, 2007, 80th Leg.,
R.S., ch. 285, § 5, sec. 32.32, 2007 Tex. Gen. Laws 555, 558; Act of May 21,
2009, 81st Leg., R.S., ch. 709, §§ 4, 5, sec. 32.32, 2009 Tex. Gen. Laws 1779,
1779–80.  The State argues that, because
the legislature “did not include a bar for offense[s] occurring before the
effective date of the legislative change[, this] indicat[es] the Legislature
contemplated a retroactive application of the change.”  This is incorrect.  “A statute is presumed to be prospective in
its operation unless expressly made retrospective.”  Tex.
Gov’t Code Ann. § 311.022 (Vernon 2005).  This applies to the Texas Penal Code.  See
Meadoux v. State, 307 S.W.3d 401, 417 (Tex. App.—San Antonio 2009), aff’d on other grounds, 325 S.W.3d 189 (Tex. Crim. App. 2010) (applying section
311.022 to statute in the Texas Penal Code). 
Accordingly, we apply the statute as it was in effect on the date of the
offense.