

# IN THE
# TENTH COURT OF APPEALS

### No. 10-16-00157-CR

## EX PARTE REBEKAH SEDIGAS

**From the County Court at Law No. 2
McLennan County, Texas
Trial Court No. 20160002HC2**

### No. 10-16-00189-CR

## EX PARTE ERIKA HOLLAWAY

**From the County Court at Law No. 1
McLennan County, Texas
Trial Court No. 20160001HC1**

## MEMORANDUM OPINION

In two issues in appellate cause numbers 10-16-00157-CR and 10-16-00189-CR,

appellants, Rebekah Sedigas and Erika Hollaway, challenge the trial court's denial of

their applications for writ of habeas corpus challenging the constitutionality of the City

of Waco's "no touch" ordinance for sexually-oriented businesses.[1]  Because we conclude that the complained-of ordinance is facially constitutional, and because appellants' potential punishments do not violate the Eighth Amendment to the United States Constitution, we affirm.

## I.    BACKGROUND

Here, appellants were charged by information with a Class A misdemeanor for violating City of Waco ordinance section 20-17(c), which provides the following:

> No employee who appears nude or semi-nude in a sexually oriented business shall knowingly or intentionally touch a customer or the clothing of a customer on the premises of a sexually oriented business.  No customer shall knowingly or intentionally touch such an employee or the clothing of such an employee on the premises of a sexually oriented business.

CITY OF WACO ORDINANCE § 20-17(c).

Thereafter, appellants filed pre-trial applications for writ of habeas corpus arguing that the ordinance is facially unconstitutional because it is overboard and encompasses lawful conduct.  Appellants also asserted that the ordinance violates article 1, section 13 of the Texas Constitution and the Eighth Amendment of the United States Constitution "because punishing a violation of this provision as a Class A misdemeanor is disproportionate to the offense."  *See* U.S. CONST. amend. VIII; *see also* TEX. CONST. art. 1, § 13.

---

[1] Appellants are represented by the same attorney, who filed identical briefs in these matters. Accordingly, because the facts and arguments are identical, we will consider the issues of both appellants in one opinion.

After a hearing, the trial court denied appellants' habeas-corpus applications, finding that the ordinance in question is constitutional. The trial court subsequently certified appellants' right of appeal, and these appeals followed.

## II.  CONSTITUTIONALITY OF THE WACO "NO TOUCH" ORDINANCE

In their first issue, appellants contend that the City's "no touch" ordinance violates their First Amendment rights because it is facially overbroad in that it encompasses lawful conduct, including any knowing touching by any dancer, even when not in a state of nudity or performing.

### A.  Pre-Trial Habeas Relief and Standard of Review

A claim that a statute is unconstitutional on its face may be raised by a pre-trial writ of habeas corpus because the invalidity of the statute would render the charging instrument void. *Ex parte Weise*, 55 S.W.3d 617, 620 (Tex. Crim. App. 2001). Although pre-trial habeas can be used to bring a facial challenge to the constitutionality of the statute, it may not be used to advance an "as applied" challenge. *Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010).

An appellate court reviews a trial court's decision to grant or deny an application for writ of habeas corpus under an abuse-of-discretion standard. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). In reviewing the trial court's ruling, we view the evidence in the light most favorable to the trial court's ruling. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled in part on other grounds by Ex parte Lewis*,

219 S.W.3d 335, 371 (Tex. Crim. App. 2007). The trial judge, as fact finder at the writ hearing, is the exclusive judge of witness credibility. *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006). When, as here, the resolution of the ultimate questions turns on application of legal standards, we review the trial court's ruling de novo. *Doyle v. State*, 317 S.W.3d 471, 475 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).

**B. Facial Challenge and the Overbreadth Doctrine**

To prevail on a facial challenge, a party must establish that the statute always operates unconstitutionally in all possible circumstances. *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013). A facial challenge to a statute is the most difficult challenge to mount successfully because the challenger must establish that no set of circumstances exists under which the statute will be valid. *Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992).

Whether a statute is facially constitutional is a question of law that we review de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). When the constitutionality of a statute is attacked, we begin with the presumption that the statute is valid and that the legislature has not acted unreasonably or arbitrarily. *Id.* at 14-15. The burden normally rests upon the person challenging the statute to establish its unconstitutionality. *Id.* at 15. In the absence of contrary evidence, we will presume that the legislature acted in a constitutionally-sound fashion. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App.

2002). Moreover, we must "consider the statute only as it is written, rather than how it operates in practice." *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 908 (Tex. Crim. App. 2011).

"According to the First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a 'substantial' amount of protected speech 'judged in relation to the statute's plainly legitimate sweep.'" *Ex parte Lo*, 424 S.W.3d at 19 (internal citation & footnote omitted). To further clarify, the Court of Criminal Appeals has recently stated the following with respect to the "overbreadth" doctrine:

> The First Amendment protects, among other things, the freedom of speech. The First Amendment right to freedom of speech applies to the states by virtue of the Fourteenth Amendment.
>
> . . . .
>
> The overbreadth doctrine is "strong medicine" that is used "sparingly and only as a last resort." The overbreadth of a statute must be "substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." The statute must prohibit a substantial amount of protected expression, and the danger that the statute will be unconstitutionally applied must be realistic and not based on "fanciful hypotheticals." The person challenging the statute must demonstrate from its text and from actual fact" that a substantial number of instances exist in which the Law cannot be applied constitutionally." The Supreme Court "generally do[es] not apply the 'strong medicine' of overbreadth analysis where the parties fail to describe the instances of arguable overbreadth of the contested law." Moreover, the overbreadth doctrine is concerned with preventing the chilling of protected speech and that concern "attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct." "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct that is necessarily associated with speech (such as picketing or demonstrating."

*State v. Johnson*, 475 S.W.3d 860, 864-65 (Tex. Crim. App. 2015) (internal citations & footnotes omitted).

"Topless dancing is protected by the First Amendment." *Haddad v. State*, 9 S.W.3d 454, 458 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (citing *Lindsay v. Papageorgiou*, 751 S.W.2d 544, 549 (Tex. App.—Houston [1st Dist.] 1988, writ denied)); *see Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65-66, 68 L. Ed. 2d 671, 101 S. Ct. 2176 (1981). However, "[t]ime, place, and manner restrictions of protected speech are permissible if they are content-neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels for communication." *Haddad*, 9 S.W.3d at 458 (citing *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293, 104 S. Ct. 3065, 82 L. Ed. 2d 221 (1984)).

## C. Discussion

Appellants contend that City of Waco ordinance section 20-17(c) is overbroad because the language purportedly prohibits any knowing or intentional touching by a dancer, even when not in a state of nudity or performing. Appellants further argue that the wording of the statute applies to employees who are fully clothed if they regularly appear nude or semi-nude at a sexually-oriented business. In support of their arguments, appellants rely on a case from the Supreme Court of Kentucky, whereby the Court concluded that a particular no-touch ordinance was unconstitutionally overbroad. *See generally Blue Movies, Inc. v. Louisville/Jefferson County Metro Gov't*, 317 S.W.3d 23 (Ky.

2010).  In *Blue Movies*, the no-touch restriction provided:  "It shall be a violation of this chapter for any employee, who regularly appears semi-nude in an adult entertainment establishment, to knowingly or intentionally touch a customer or the clothing of a customer."  *Id.* at 30.  In concluding that the ordinance was overbroad, the Kentucky Supreme Court noted:

> We do not agree with the Court of Appeals conclusion that all touching between a performer and a customer is not constitutionally protected.  As noted above, touching during an erotic performance or while in the state of nudity is not protected expression.  We would also agree that sexual touching would not be protected expression.  However, we believe that nonsexual, consensual touching, such as a handshake or a pat on the back, as a greeting or show of fellowship, is a social custom and an integral part of our culture.

*Id.* at 31.

Despite appellants' assertions to the contrary, the ordinance in this case is different than the ordinance in *Blue Movies*.  In *Blue Movies*, the ordinance specifically pertained to all employees who *regularly* appear semi-nude without a time specification.  *Id.* at 30.  Conversely, the Waco ordinance does not prohibit contact between employees who are clothed, and it does not include the term "regularly."

Furthermore, as noted earlier, City of Waco ordinance section 20-17(c), which provides the following:

> No employee who appears nude or semi-nude in a sexually oriented business shall knowingly or intentionally touch a customer or the clothing of a customer on the premises of a sexually oriented business.[2]   No

---

[2] The Waco ordinance defines "[e]mploy, employee, and employment" as pertaining:

customer shall knowingly or intentionally touch such an employee or the clothing of such an employee on the premises of a sexually oriented business.

CITY OF WACO ORDINANCE § 20-17(c). The key word in the Waco ordinance is "appears," which, using its plain and ordinary meaning, is defined as "to be or come in sight . . . to come into public view." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 56 (10th ed. 1993); *see* TEX. GOV'T CODE ANN. § 311.011(a) (West 2013) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). Therefore, the Waco ordinance prohibits an employee who has "come into public view" as nude or semi-nude from knowingly or intentionally touching a customer while on the premises of a sexually-oriented business. *See* CITY OF WACO ORDINANCE § 20-17(c); *see also* MERRIAM WEBSTER'S COLLEGIATE DICTIONARY at 56. This is different from the ordinance in *Blue Movies* in that the Waco ordinance does not apply to employees who have appeared nude or semi-nude at a time other than the offense or who regularly appear nude or semi-nude. It only applies at the time that the employee is nude or semi-nude on the premises of a sexually-oriented business and touches a customer. Given this, we are not persuaded by the *Blue Movies* opinion. And because a reasonable construction

---

to any person who performs any service on the premises of a sexually oriented business, on a full time, part time, or contract basis, regardless of whether the person is denominated an employee, independent contractor, consultant, agent, lessee, or otherwise. "Employee" does not include a person exclusively on the premises for repair or maintenance of the premises or for the delivery of goods to the premises.

CITY OF WACO ORDINANCE § 20-2.

based on the plain language of the ordinance avoids potential constitutional questions, we reject appellants' constitutional challenge to the ordinance using the overbreadth doctrine. *See Johnson*, 475 S.W.3d at 864-65; *Ex parte Lo*, 424 S.W.3d at 14-15; *see also Rodriguez*, 93 S.W.3d at 69. Accordingly, we must presume the ordinance to be constitutionally valid. *See Johnson*, 475 S.W.3d at 864-65; *Ex parte Lo*, 424 S.W.3d at 14-15; *Rodriguez*, 93 S.W.3d at 69. We overrule appellants' first issues.

## III. DISPROPORTIONATE PUNISHMENT

In their second issue, appellants assert that Waco's "no touch" ordinance violates their Eighth Amendment right to be free from cruel and unusual punishment because the punishment associated with the ordinance is disproportionate to the actual offense. In making this argument, appellants complain that the "no touch" ordinance is classified as a Class A misdemeanor, despite "offenses [, such as prostitution, which is a Class B misdemeanor,] which the ordinance is purportedly designed to protect against have a lessor or equal punishment."

The Eighth Amendment, which forbids cruel and unusual punishments, contains a narrow proportionality principle prohibiting a sentence from being greatly disproportionate to the crime it punishes. *See Ewing v. California*, 538 U.S. 11, 20, 123 S. Ct. 1179, 1185, 155 L. Ed. 2d 108 (2003) (citing *Harmelin v. Michigan*, 501 U.S. 957, 996-97, 111 S. Ct. 2680, 2702, 115 L. Ed. 2d 836 (1991) (Kennedy, J., concurring in part and concurring in judgment)). Within the Constitution's ban on cruel and unusual

punishments is the "precept of justice that punishment for crime should be graduated and proportioned to [the] offense." *Weems v. United States*, 217 U.S. 349, 367, 30 S. Ct. 544, 549, 54 L. Ed. 2d 793 (1910). "The Eighth Amendment does not require strict proportionality between crime and sentence; rather, it forbids only extreme sentences that are grossly disproportionate to the crime." *Rivera v. State*, 363 S.W.3d 660, 678 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Ewing*, 538 U.S. at 23, 123 S. Ct. at 1187).

The United States Supreme Court has stated that generally there are two classifications of proportionality challenges: (1) "The first involves challenges to the length of term-of-years sentences given all the circumstances in a particular case" and (2) "The second classification of cases has used categorical rules to define Eighth Amendment standards." *Graham v. Florida*, 560 U.S. 48, 59-60, 130 S. Ct. 2011, 2021-22, 176 L. Ed. 2d 825 (2010). Under the first approach, courts must determine "whether the sentence for a term of years if grossly disproportionate for a particular defendant's crime." *Id.* at 60, 130 S. Ct. at 2022. Under the second approach, we consider the nature of the offense and the characteristics of the offender. *Id.* at 60, 130 S. Ct. at 2022. Here, we are presented with a categorical challenge turning on the nature of the offense.

In analyzing a categorical challenge, we consider the following: (1) whether there is a national consensus against imposing the punishment for the offense; (2) the moral culpability of the offenders at issue in light of their crimes and characteristics; (3) the severity of the punishment; and (4) whether the punishment serves legitimate

penological goals.  *Id.* at 61, 67-68, 130 S. Ct. at 2022, 2026; *see Meadoux v. State*, 325 S.W.3d 189, 194 (Tex. Crim. App. 2010).  Appellants have the burden of showing these factors. *Meadoux*, 325 S.W.3d at 194 n.7.

Here, there is no evidence or discussion of a national consensus against prosecuting a violation of an ordinance as a Class A misdemeanor.  Notably, in 2011, the First Court of Appeals addressed and rejected the same argument advanced by appellants in this case.  *Rivera*, 363 S.W.3d at 678-80.  Specifically, the *Rivera* Court rejected an argument that a similarly-worded "no touch" ordinance was unconstitutional because it authorized punishment not proportionate to any offense committed for violating the ordinance.  *See id.* at 678-80.  And like the *Rivera* Court, we can think of no reason why exotic dancers would not be morally culpable for violating the ordinance.  *See id.* at 679 (citing *Meadoux*, 325 S.W.3d at 194-95 (discussing a juvenile defendant's argument that he was less morally culpable for murder than adult offenders in support of his contention that life in prison for juvenile offenders is a disproportionate sentence)).

Additionally, we adopt the following reasoning of the *Rivera* Court with respect to the remaining factors for a categorical challenge:

> For violating the Ordinance, a Class A misdemeanor, an offender can be fined up to $4,000, confined in jail for a term not to exceed one year, or receive both punishments.  *See* TEX. PENAL CODE ANN. § 12.21 [(West 2011)].  While it is not inconsequential, such punishment is less than the punishment range for offenses that the Ordinance was enacted to prevent, such as narcotics and prostitution violations.  *See N.W. Enters., Inc.*, 352 F.3d [162, 176 n.7 (5th Cir. 2003)] (detailing that Ordinance 97-75 enacted to prevent associated crimes, including narcotics offenses).  For example, the

offense of possession of less than one gram of a Penalty 1 controlled substance is a state jail felony, which has a punishment range of not more than two years or less than 180 days' imprisonment.  TEX. HEALTH & SAFETY CODE ANN. § 481.115(a) [(West 2010)]; TEX. PENAL CODE ANN. § 12.35(a) [(West Supp. 2016)].

Significantly, certain prostitution offenses, which, as mentioned, appellants characterize as "the primary evil the [ ] ordinance was designed to curtail," have punishment ranges greater than or equal to that of a violation of the Ordinance.  The offense of prostitution is raised from a Class B misdemeanor to Class A misdemeanor if the offender has previously been convicted of prostitution once or twice under Penal Code section 43.02.  *See* TEX. PENAL CODE ANN. § 43.02 [(West Supp. 2016)].  Section 43.02 further provides that if an offender has been previously convicted three or more times under that section, then the offense is a state jail felony.  *See id.*

Penal Code sections 43.03 and 43.04 define criminal offenses for promoting prostitution.  *See* TEX. PENAL CODE ANN. §§ 43.03, 43.04 [(West Supp. 2016)].  Offenses relating to the promotion of prostitution range from a Class A misdemeanor to a third-degree felony.  *See* TEX. PENAL CODE ANN. §§ 43.03(b), 43.04(b).  In addition, Penal Code section 43.05 defines the offense of "compelling prostitution" as a second-degree felony.  *See* TEX. PENAL CODE ANN. § 43.05 [(West Supp. 2016)].

With respect to penological goals, a sentence can have a variety of justifications, such as incarceration, deterrence, retribution, or rehabilitation.  *Ewing*, 538 U.S. at 25, 123 S. Ct. at 1187; *see Meadoux*, 325 S.W.3d at 195.  Some or all of these justifications may play a role in a State's sentencing scheme. . . .  Selecting the sentencing rationales is generally a policy choice to be made by state legislatures, not the courts. . . .  Indeed, the Texas Legislature, when it enacted Chapter 243 [of the Texas Local Government Code], observed that "the unrestricted operation of certain sexually oriented businesses may be detrimental to the public health, safety, and welfare by contributing to the decline of residential and business neighborhoods and the growth of criminal activity."  TEX. LOC. GOV'T CODE ANN. § 243.001(a) [(West 2016)].  The legislature gave cities broad authority to "adopt regulations regarding sexually oriented businesses as the municipality . . . considers necessary to promote the public health, safety, or welfare."  [*Id.*].  As discussed by the Fifth Circuit in *N.W. Enterprises*, Ordinance 97-75 was enacted specifically to regulate and to prevent a

gamut of criminal offenses associated with the operation of sexually oriented businesses. *N.W. Enters., Inc.*, 352 F.3d at 176 & n.7. Prosecuting violations of the Ordinance as a Class A misdemeanor is justified to deter continuing violations of the Ordinance that legislative bodies have determined leads to greater criminal activities.

363 S.W.3d at 679-80. Like the *Rivera* Court, we, too, believe that prosecuting violations of the City of Waco's "no touch" ordinance as a Class A misdemeanor is justified to deter continuing violations of the ordinance that legislative bodies have determined leads to greater criminal activities.[3] *See id.* at 680.

Based on the foregoing, we conclude that appellants have not carried their burden to show that the punishment range for a Class A misdemeanor is grossly disproportionate to the offense of violating the City of Waco's "no touch" ordinance. *See Meadoux*, 325 S.W.3d at 194 n. 7. We overrule appellants' second issue.

---

[3] Our conclusion is further supported by the policy statement contained in City of Waco Ordinance Section 20-1(a), which provides that:

> It is the purpose of this chapter to regulate sexually oriented businesses in order to promote the health, safety, and general welfare of the citizens of this city, and to establish reasonable and uniform regulations to prevent the deleterious secondary effects of sexually oriented businesses within the city. The provisions of this chapter have neither the purpose nor effect of imposing a limitation or restriction on the content or reasonable access to any communicative materials, including sexually oriented materials. Similarly, it is neither the intent nor effect of this chapter to restrict or deny access by adults to sexually oriented materials protected by the First Amendment, or to deny access by the distributors and exhibitors of sexually oriented entertainment to their intended market. Neither is it the intent nor effect of this chapter to condone or legitimize the distribution of obscene material.

CITY OF WACO ORDINANCE § 20-1(a).

## IV.    CONCLUSION

Having overruled appellants' issues in both cause numbers, we affirm the judgments of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
(Chief Justice Gray dissenting)*
Affirmed
Opinion delivered and filed October 12, 2016
Do not publish
[CR25]

*(Chief Justice Gray dissents.  A separate opinion will not issue.  He provides, however, the following comment:  The Court rewrites the ordinance to narrow its scope so that it might be constitutional.  As written, there is no link between the time the employee appears nude or semi-nude and the time the employee touches a customer.  As written, the totally nude pole dancer violates the ordinance when fully clothed checking in top-coats.  I have searched for the limitation the Court finds to limiting the touching to the time period when the employee is nude or semi-nude.  It is not there.  As such, the City's ordinance is even more broad than the one found unconstitutional in *Blue Movies*.  If Waco had wanted the constraint written into the ordinance by the Court, all it had to do was change "who appears" to "while appearing" so that the statute would read "No employee while appearing nude or semi-nude . . . ."  That is not what they passed but that is how the Court rewrites it for them.  I would not.  Accordingly, I dissent.)

