

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00596-CV

**IN THE MATTER OF T.L.R.**, a Juvenile

From the 436th District Court, Bexar County, Texas
Trial Court No. 2014JUV00182
The Honorable Lisa Jarrett, Judge Presiding

Opinion by: Sandee Bryan Marion, Chief Justice

Sitting: Sandee Bryan Marion, Chief Justice
Karen Angelini, Justice
Jason Pulliam, Justice

Delivered and Filed: September 2, 2015

AFFIRMED

A jury found appellant engaged in delinquent conduct, and the trial court placed appellant on probation for nine months in his home. In two issues on appeal, appellant asserts the trial court erred by (1) overruling his objection to his statement that there were brass knuckles in his backpack and (2) denying a requested jury charge on the warrantless search of his backpack. We affirm.

### BACKGROUND

Jonathan Tamayo, a security guard, was in his car patrolling The Vineyard Shopping Center when he saw two juvenile males walking from behind Gabriel's Liquor. Tamayo said he was wearing a blue polyester uniform, with a security badge and his name tag on his chest, and a patch on each arm. A placard on Tamayo's car read Texas Lawman Security.

Tamayo testified he identified himself as security, approached the boys in a casual, non-confrontational manner, and asked what they were doing. He said both boys were cordial, and responded that they were passing through to "do some tricks." One of the boys (later identified as appellant) had a bicycle, and both carried backpacks. Tamayo said he told the boys they could not do tricks on the property. According to Tamayo, the boys were courteous and compliant; they said thank you; and then they walked away. Tamayo stated he continued his patrol around the property, and about an hour later he saw the two boys again. This time, Tamayo saw appellant doing tricks on his bike in a small drainage culvert behind Target. Tamayo said he asked the boys for identification. He testified the boys were not required to respond and they were free to leave. Tamayo said the other boy was calm, but appellant was "fidgety . . . kind of moving side to side [and] pacing back and forth." After appellant handed Tamayo his school identification, Tamayo asked both boys to sit on the curb. Because appellant was acting nervous, Tamayo asked the boys whether "they had anything that would be considered illegal to any Texas peace officer on them." According to Tamayo, appellant asked for "clarification," and Tamayo told him "in layman's terms if he had anything illegal on him that a cop would think that — you know, a police officer would think was illegal." Appellant responded that he had a knife in his backpack, and he began to reach for the backpack. Tamayo said he told appellant not to reach for the backpack, and appellant then admitted he also had brass knuckles in the backpack. Tamayo said he told appellant he would retrieve the item(s) from the backpack and he asked appellant if he had a problem with that, to which appellant responded "no."

Tamayo said he retrieved the brass knuckles, which contained a concealed switchblade. Tamayo said he then called the San Antonio Police Department and asked that the patrol officer assigned to the area call him. Tamayo testified that when Officer James Van Kirk called him, he told the officer he had informed the boys they could not do tricks and had to leave the property,

and about the knife/brass knuckles. Tamayo said the officer told him to "[g]o ahead and hook them up." Tamayo said he then handcuffed the boys, placed appellant's backpack on the hood of his car, and placed the knife/brass knuckles on the passenger seat of his car. A few minutes later, Officer Van Kirk arrived at the scene, and Tamayo said he gave the officer the knife/brass knuckles.

Officer Van Kirk testified he was dispatched to a location where a security officer had detained two juvenile males who had been asked to leave the property, but refused to do so. Van Kirk said that, without knowing more, this was a call for criminal trespass, which is an arrestable offense. Van Kirk thought he saw both backpacks in front of the boys, within their immediate physical control. Van Kirk testified he placed both boys under arrest for criminal trespass, and then he asked both boys what was inside their backpacks. Officer Van Kirk said the boys "freely admitted . . . that inside of their backpacks were illegal items such as drug paraphernalia, marijuana and brass knuckles with a knife." Van Kirk stated he asked the boys what was inside their backpacks because Tamayo had told him the boys made the statement about the weapon to him. Van Kirk said he conducted a search incident to arrest, and found the knife/brass knuckles inside appellant's backpack. Van Kirk said he handcuffed both boys, but he could not remember whether they were already handcuffed when he arrived at the scene and he did not remember telling Tamayo to handcuff them.

The last witness to testify was D.T., the other boy who was with appellant. D.T. testified he had marijuana with him at the time, but he did not know if appellant had anything with him. D.T. said Tamayo asked them what they were doing, but he did not ask them to leave during the first encounter.[1] D.T. said Tamayo asked them to leave during the second encounter, and began

---

[1] On cross-examination, D.T. said Tamayo did ask them to leave during the first encounter.

to question them. According to D.T., appellant was acting "normal" and he was not nervous. However, D.T. later said appellant was acting nervous and fidgeting around. D.T. could not remember what appellant said when Tamayo asked what was in his backpack, but he admitted Tamayo found "like paraphernalia and a weapon." D.T. said he did not feel free to leave prior to being handcuffed. D.T. said Officer Van Kirk also searched the backpacks, which were on the hood of Tamayo's car. D.T. did not see where Tamayo put the knife/brass knuckles after retrieving them from the backpack, but he remembered that Officer Van Kirk pulled them from the backpack.

## VOLUNTARINESS OF STATEMENT

In his first issue, appellant asserts the trial court erred when it overruled defense counsel's objection to appellant's statement that there were brass knuckles in his backpack because the statement was not freely and voluntarily made. On appeal, appellant does not argue the challenged statement was the result of a custodial interrogation. Instead, appellant contends his statement was involuntary and he raises his challenge under Texas Family Code section 54.03(e) and Texas Code of Criminal Procedure articles 38.21 and 38.22.

Family Code section 54.03(e) provides that "[a]n extrajudicial statement which was obtained without fulfilling the requirements of this title or of the constitution of this state or the United States, may not be used in an adjudication hearing." TEX. FAM. CODE ANN. § 54.03(e) (West 2014). Article 38.21 of the Code of Criminal Procedure provides that "[a] statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion, under the rules hereafter prescribed." TEX. CRIM. PROC. CODE ANN. art. 38.21 (West 2005). "Article 38.22 of the Code of Criminal Procedure sets out rules governing the admissibility of an accused's written and oral statements that are the product of custodial interrogation." *Oursbourn v. State*, 259 S.W.3d 159, 171 (Tex. Crim. App. 2008).

However, "Section 6 of Article 38.22 applies to both an accused's custodial and non-custodial statements because it provides that only 'voluntary' statements may be admitted." *Id.*

A statement is involuntary if there was "official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995); *Meadoux v. State*, 307 S.W.3d 401, 412 (Tex. App.—San Antonio 2009), *aff'd*, 325 S.W.3d 189 (Tex. Crim. App. 2010). When a defendant challenges the voluntariness of his statement, the State bears the burden of proving by a preponderance of the evidence that the statement was given voluntarily. *Id.* We review a trial court's ruling as to the admissibility and voluntariness of a statement for an abuse of discretion. *See Delao v. State*, 235 S.W.3d 235, 238 (Tex. Crim. App. 2007). In conducting this review, we must examine the totality of the circumstances and will reverse the ruling only if the trial court acted arbitrarily or unreasonably, without reference to any guiding rules or principles. *Id.* at 239. The trial court is the sole judge of the weight and credibility of the evidence, and the trial court's finding on voluntariness may not be disturbed on appeal absent an abuse of discretion. *Alvarado*, 912 S.W.2d at 211; *Meadoux*, 307 S.W.3d at 412.

Youth, intoxication, mental retardation, and other disabilities are usually not enough, by themselves, to render a statement inadmissible under article 38.22; however, they are factors the fact finder is entitled to consider. *Id.* In this case, appellant was fourteen years old on the date of the incident, and he contends, on appeal, he was not sophisticated enough to draw much distinction between a private security guard and an actual police officer. Appellant argues that Tamayo possessed many of the accoutrements of a police officer: he carried a weapon and handcuffs, his uniform was similar to a police officer's, his vehicle resembled a police vehicle, and a young child could have confused Texas Lawman's Security with an actual law enforcement agency. Appellant—who did not testify at trial—contends on appeal that if he appeared nervous it was

because he felt he had been caught and would have to pay the consequences, and that if he had felt free to leave, he would have done so. Appellant concludes that, because of his respect for a man who appeared to be a police officer, he gave an involuntary confession.

We do not believe appellant's statement was involuntary. At trial, defense counsel agreed appellant's statement that there was a knife in the backpack was voluntary. Also, immediately after appellant made the statement, and with no further questioning by Tamayo, appellant reached for his backpack and Tamayo told him not to. Appellant then stated—again with no further questioning by Tamayo—that he had brass knuckles in the backpack. On cross-examination, Tamayo said that after he told appellant not to reach for the backpack, he (Tamayo) took the backpack and that is when appellant made the statement about the brass knuckles. On this record, we cannot conclude the trial court abused its discretion by overruling appellant's objection and allowing appellant's statement into evidence.

## JURY CHARGE

In his second and final issue on appeal, appellant asserts the trial court erred by denying his request for the following jury charge:

> You are instructed that under our law as applicable to this case any search of [appellant] or his property without a search warrant or the voluntary consent of [appellant] to such search without probable cause or other legal justification would not be lawful. Therefore, in this case, should you fail to find from the evidence beyond a reasonable doubt or if you have a reasonable doubt thereof, that consent to search [appellant] and his property was granted voluntarily and understandingly given or that there was other legal justification for such search then such search would be unlawful and you would wholly disregard the same and any evidence obtained as a result thereof.

> Do you find, from the evidence, beyond a reasonable doubt, that the search of [appellant] and the seizure of the knuckles was lawful?

> "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of

America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005). "In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained." *Id.*

A defendant's right to the submission of jury instructions under article 38.23(a) is limited to disputed fact issues that are material to his claim of a constitutional or statutory violation which would render evidence inadmissible. *Madden v. State*, 242 S.W.3d 504, 509-10 (Tex. Crim. App. 2007). The terms of the statute are mandatory, and when an issue of fact is raised, a defendant has a statutory right to have the jury charged accordingly. *Id.* at 510. A defendant must satisfy the following three requirements before he is entitled to the submission of a jury instruction under article 38.23(a): (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) the contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. *Id.* If there is no disputed factual issue, the legality of the conduct is determined by the trial court as a question of law. *Id.* Also, if other undisputed facts are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence. *Id.* The disputed fact must be an essential one in deciding the lawfulness of the challenged conduct. *Id.* at 511.

During the charge conference and on appeal, appellant asserts he was entitled to the requested instruction because he satisfied the three requirements. First, appellant contends the fact issue raised by the evidence is whether the knife/brass knuckles was still in appellant's backpack (as stated by Officer Van Kirk) or was it out of appellant's reach on the passenger seat of Tamayo's car (as stated by Tamayo). Second, appellant asserts the evidence on this fact was affirmatively

contested based on defense counsel's two objections to the admission of the weapon on the grounds that testimony about the weapon's location was in conflict.[2] Third, appellant contends the contested fact issue was material because appellant's confession was not voluntarily made; therefore, Tamayo had no right to seize the weapon. As to this final requirement, appellant asserts that if Tamayo's version of events is true, then the weapon was illegally placed in his car and it posed no threat to anyone's safety. On the other hand, appellant asserts that if Officer Van Kirk's version is true, then the weapon was in appellant's backpack and within appellant's reach; therefore, Van Kirk had the right to conduct a search incident to the criminal trespass arrest.

In this case, although Tamayo's testimony and Officer Van Kirk's testimony about the location of the backpack when it was searched conflicted, this factual issue was not material to the lawfulness of the search of the backpack and seizure of the knife/brass knuckles. Appellant does not contest the voluntariness of his statement that he had a knife in his backpack, and we have already concluded his statement regarding the brass knuckles was voluntary. Even if appellant's statement about the brass knuckles should have been excluded, appellant makes no argument on appeal that Tamayo was not justified in searching the backpack based on appellant's voluntary statement that there was a knife in the backpack.

As to Officer Van Kirk, he testified the backpack was in front of and within appellant's immediate control, and he testified he conducted a search of the backpack incident to the arrest of

---

[2] The two objections were raised during trial when the State asked to admit into evidence the evidence envelope that contained the knife/brass knuckles (Exhibit 2) and the knife/brass knuckles (Exhibit 3). The first time defense counsel objected, counsel took Officer Van Kirk on voir dire and elicited the following: Van Kirk could not remember if the boys were already in handcuffs when he arrived; he handcuffed the boys when he decided to arrest them; he found the knife/brass knuckles in the course of searching the backpack and he "did not believe" the weapon was given to him by someone else; and he thought both the boys and Tamayo told him the weapon was in the backpack. After this testimony, defense counsel objected to the admissibility of the evidence "because of the direct conflict between the two individuals that have testified on where this item was found and how this officer came into possession of it." The trial court overruled the objection to admission of the knife/brass knuckles. Later in trial, the State asked to publish Exhibits 2 and 3 and the trial court asked for objections. Defense counsel did not object to Exhibit 3. Counsel's objection to Exhibit 2, the envelope, was "based upon the conflict of the testimony. We candidly don't know where this officer got the evidence."

appellant. The justification for permitting [a warrantless search incident to arrest] is (1) the need for officers to seize weapons or other things which might be used to assault [a]n officer or effect an escape, and (2) the need to prevent the loss or destruction of evidence. *State v. Granville*, 423 S.W.3d 399, 410 (Tex. Crim. App. 2014) (internal quotations omitted). A search is incident to arrest only if it is "substantially contemporaneous" with the arrest and is confined to the area within the immediate control of the arrestee. *Id.* Therefore, even if appellant's statement about the brass knuckles should have been excluded, under Officer Van Kirk's version of events, he was justified in conducting a warrantless search of the backpack incident to appellant's arrest based on appellant's voluntary statement that there was a knife in the backpack and the backpack was within appellant's immediate control.

"[T]o obtain a jury instruction under Article 38.23(a), the disputed fact must be one that affects the determination of the legal issue." *Madden*, 242 S.W.3d at 517. The legal question here is whether there was probable cause or justification to search appellant's backpack and, therefore, to seize the knife/brass knuckles. If the justification for the search of the backpack—conducted by either Tamayo or Officer Van Kirk—rested solely on the backpack's location, then a dispute about that fact would require a jury instruction. But, if the search was justified under either version of events, then the dispute over the location of the backpack when it was searched need not be submitted to the jury. Here, the latter is the case; therefore, no fact issue material to whether the search was justified was raised. Accordingly, the trial court did not err by refusing appellant's requested instruction. *See id.* at 517-18 ("Of course, a trial judge might err on the side of caution and submit a jury instruction even when the disputed fact does not appear to be outcome-determinative, because appellate courts might disagree on the legal question of sufficient facts to support reasonable suspicion. But it would be absurd to say that a factual dispute about whether the defendant was wearing green socks or red socks, or whether he was going 61 m.p.h. or 65

m.p.h. in a 55 m.p.h. zone, requires a jury instruction.  Neither of these disputed facts are material, much less crucial, to the determination of the legal question [of whether the officer had reasonable suspicion to detain defendant].").

## CONCLUSION

We overrule appellant's issues on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Chief Justice