

# NUMBERS 13-24-00241-CR, 13-24-00242-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**MICAHIL CHRISTOPHER COSBY,**                             **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                    **Appellee.**

---

## ON APPEAL FROM THE 105TH DISTRICT COURT
## OF KLEBERG COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina**
**Memorandum Opinion by Justice Benavides**

On December 1, 2022, appellant Micahil Christopher Cosby pleaded guilty to aggravated assault with a deadly weapon, a second-degree felony, *see* TEX. PENAL CODE ANN. § 22.02(a)(2), and bail jumping and failing to appear, a third-degree felony, *see id.*

§ 38.10.[1] At that time, the trial court deferred an adjudication of guilt and placed Cosby on community supervision for a period of five years for each offense. Subsequently, after a hearing on the State's motions to revoke, the trial court adjudicated Cosby guilty of both offenses, revoked Cosby's community supervision, sentenced him to ten years' imprisonment for each offense, and ordered the sentences to run concurrently. By a single issue, Cosby contends the trial court violated the Eighth Amendment's prohibition on grossly disproportionate punishments by sentencing him to prison without first conducting an inquiry into his mental health. *See* U.S. CONST. amend. VIII. We affirm.

## I.    BACKGROUND

On January 4, 2024, the State filed two separate motions to revoke: one in the aggravated assault case and one in the bail jumping case. The motion to revoke in the aggravated assault case alleged Cosby violated twenty conditions of his community supervision and the motion in the bail jumping case alleged that he violated fourteen.

At the hearing on the motions, Cosby pleaded true to allegations 3, 5–9, and 11–20 in the motion regarding his aggravated assault charge and allegations 3, 5–9, and 11–14 in the motion regarding his bail jumping charge. By pleading true to these allegations, Cosby agreed that he: (1) failed to report to his probation officer for the months of February–March 2023, and June–December 2023; (2) tested positive for marijuana in January, April, and May of 2023; (3) failed to complete an anger management program by a date certain; (4) failed to complete a substance abuse evaluation by a date certain; and (5) failed to pay certain fines and fees by a date certain. However, by pleading not

---

[1] Appellate cause number 13-24-00241-CR corresponds to the bail jumping case, and appellate cause number 13-24-00242-CR corresponds to the aggravated assault with a deadly weapon case.

true to allegations 1, 2, 4, and 10 in both motions, Cosby denied: (1) failing to abide by a "zero tolerance" policy; (2) committing the offense of assault on a federal agent on or about December 18, 2023; (3) failing to report the resultant arrest to his supervision officer within twenty-four hours; and (4) associating with "felons, marijuana users, or those likely to commit crime."

Oscar Trevino testified that on December 18, 2023, he was driving to work with Cosby when "all of a sudden, [Cosby] just went blue, like he was staring up, and he started trembling." Trevino saw a border patrol vehicle up ahead and flagged down the agents inside, as he "thought [Cosby] was having a heart attack or a seizure."

Trevor Cohee, an agent with United States Border Patrol, testified that Trevino informed him and Agent Cantu[2] that "he thought something was wrong with [Cosby] and that [they] needed to call medical assistance." Agents Cohee and Cantu instructed Trevino to meet them at a nearby parking lot. Once there, Cosby "stepped out of the vehicle and approached towards Agent Cantu" in an "aggressive" manner. Agent Cohee testified that they "took him down to the ground to make things safer and get more control of the situation." While they were restraining Cosby on the ground, the agents "continued to ask him if he was okay, if he needed medical attention, what was going on, to, you know, stop fighting [them] . . . and he didn't say anything. He just kept resisting [their] movements."

The agents attempted to handcuff Cosby, and during the ensuing scuffle, "Cosby decided to start biting [Agent] Cantu on the arm, leaving marks, drawing blood." Agent

---

[2] Agent Cantu's first name does not appear in the record.

3

Cohee testified that he had experience dealing with people suffering from seizures but felt that this behavior more closely resembled someone "under the influence of synthetic drugs, such as K2, like synthetic marijuana, or synthetic heroin, things of that nature."

Records from Cosby's visit to the hospital after this incident were admitted into evidence and indicate a positive urinalysis result for cannabinoids but no other drugs. Cosby reported to medical professionals "that he possibly had a seizure" and could not "remember what happened." He acknowledged that he failed to take his seizure medication that day and admitted to "medication non[]compliance." According to a progress note in the records, when hospital workers began the process to discharge Cosby, "he started to behave aggressive[ly] and [was] disoriented." A hospital worker noted that Cosby "may be trying to delay incarceration."

Records from a psychological evaluation conducted in March of 2022 were also admitted into evidence. According to these records, Cosby reported experiencing bouts of seizures during which "he does not know what he is doing and will become violent while in a daze amidst seizure." Cosby suffered from "associated anxiety and fears about his behavior" and had "lost at least three jobs due to seizures occurring at work." He had also applied for and been denied social security disability benefits on three separate occasions. Because of his inability to earn a regular living, Cosby explained that "[t]here are times when he cannot afford medication."

Kaitlyn Bunch, a nurse at the Kleberg County Jail, testified that since entering the jail in January of 2024, Cosby had suffered two seizures, both of which "happened when he was refusing to take his medication." She also testified that Cosby was brought to the hospital both times to be stabilized.

4

During argument, trial counsel urged that prison was not an appropriate environment for Cosby, as prisons do not "have the right facilities or the right medical treatment to try to help [Cosby] or treat him." Counsel requested that Cosby instead "be evaluated by a doctor" so he could "have some sort of psychological diagnosis." Ultimately, the trial court found all the State's allegations true, adjudicated Cosby guilty of both offenses, and sentenced him as described above. This appeal followed.

## II. MENTAL HEALTH INQUIRY

By his sole issue, Cosby argues that the Eighth Amendment's prohibition on grossly disproportionate punishments was violated, as the trial court failed to abate the proceedings and "order an examination of [Cosby] by a mental health expert to determine if a more appropriate disposition would be [placing Cosby] . . . in a group home for those who suffer from continuous mental seizures." *See* U.S. CONST. amend VIII.

## A. Applicable Law

The Eighth Amendment, made applicable to the States by the Fourteenth Amendment, "prohibits the imposition of punishments that are inherently barbaric or grossly disproportionate to the offense." *Meadoux v. State*, 325 S.W.3d 189, 193 (Tex. Crim. App. 2010). The concept of proportionality in the Eighth Amendment context "requires that punishment be graduated and proportioned to the offense." *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016). "But, this is a narrow principle that does not require strict proportionality between the crime and the sentence." *Id.* Traditionally, when the punishment assessed is within the statutory limits and not otherwise illegal, it "is not excessive, cruel, or unusual." *Id.* An argument that a punishment is cruel and unusual, like most other constitutional complaints, must be

preserved by a timely objection or complaint, typically at the time of disposition or in a motion for new trial. *Trevino v. State*, 676 S.W.3d 726, 732–33 (Tex. App.—Corpus Christi–Edinburg 2023, no pet.); *see* TEX. R. APP. P. 33.1(a).

## B.    Analysis

Despite our very clear holding in *Trevino* [3] that "an unpreserved grossly disproportionate sentencing argument cannot conceivably persuade this Court and is thus frivolous," 676 S.W.3d at 732–33, and despite the fact that this issue was not preserved below, Cosby contends that the trial court's failure to sua sponte conduct an examination of his mental health somehow violated the Eighth Amendment's prohibition on grossly disproportionate punishments. Presumably, although he never explicitly connects the

---

[3] Counsel in this case was counsel of record in *Trevino v. State*. 676 S.W.3d 726 (Tex. App.—Corpus Christi–Edinburg 2023, no pet.). Nevertheless, he failed to cite to *Trevino*. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT 3.03 ("A lawyer shall not knowingly . . . fail to disclose to the tribunal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel."). We are also painfully aware that counsel essentially copied and pasted parts of his brief from that case into his brief in this case, which appears to be counsel's modus operandi when filing briefs with this Court. Counsel modifies the facts where necessary, but his legal analysis remains the same as the one that we rejected as frivolous in *Trevino*.

Counsel has an "ethical obligation to avoid burdening the courts with wholly frivolous appeals." *Kelly v. State*, 436 S.W.3d 313, 318 (Tex. Crim. App. 2014); *see* TEX. DISCIPLINARY RULES PROF'L CONDUCT 3.01 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless the lawyer reasonably believes that there is a basis for doing so that is not frivolous."). And, more importantly, counsel has an ethical obligation to provide his client with competent and diligent representation. TEX. DISCIPLINARY RULES PROF'L CONDUCT 1.01 cmt. 6 ("Having accepted employment, a lawyer should act with competence, commitment and dedication to the interest of the client and with zeal in advocacy upon the client's behalf. A lawyer should feel a moral or professional obligation to pursue a matter on behalf of a client with reasonable diligence and promptness despite opposition, obstruction, or personal inconvenience to the lawyer."). If counsel continues to urge frivolous arguments without any good faith justification, the Court may have no choice but to take action to ensure the integrity of the legal system and that the rights of counsel's clients are being adequately protected. *See* TEX. R. APP. P. 43.6 ("The court of appeals may make any other appropriate order that the law and the nature of the case require."); TEX. CODE JUD. CONDUCT Canon 3D(2) ("A judge having knowledge that a lawyer has committed a violation of the Texas Disciplinary Rules of Professional Conduct that raises a substantial question as to the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects shall inform the Office of General Counsel of the State Bar of Texas or take other appropriate action."). We expect counsel to take this footnote for what it is: a serious warning.

6

dots,[4] Cosby believes it was disproportionate to the severity of the underlying offenses to sentence him to prison without conducting such an examination. But as we decided in *Trevino*, this argument is foreclosed by his failure to raise it below. *See id.*; TEX. R. APP. P. 33.1(a); *see also Perez v. State*, No. 13-22-00092-CR, 2022 WL 3654758, at *2–3 (Tex. App.—Corpus Christi–Edinburg Aug. 25, 2022, no pet.) (mem. op., not designated for publication). In his brief, Cosby does not offer any argument for why the issue is properly before us despite the lack of preservation.

Further, while it is true that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain[]'" proscribed by the Eighth Amendment's parameters, *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)), "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989).

The trial court's mere knowledge of Cosby's seizure condition did not trigger any obligation on the court's part with respect to the appropriate punishment. But now that his

---

[4] The fact that commitment might be a "more appropriate" punishment, as Cosby frames it, does not necessarily mean that the assessed term of imprisonment is a disproportionate one. The proportionality between the trial court's imposition of a ten-year prison sentence for aggravated assault with a deadly weapon and bail jumping was never discussed, much less objected to. Additionally, other parts of Cosby's argument border on incomprehensible. At one point he argues, with no citations, that the trial court was required to abate the proceedings "and order an examination of [Cosby] by a mental health expert to determine if a more appropriate disposition would be [placing Cosby] . . . in a group home for those who suffer from continuous mental seizures." (Emphasis omitted). But at another point he questions whether Cosby had the "required mens rea" at the time he bit Agent Cantu, again without any citations. (Emphasis omitted). These are two different arguments, and Cosby inadequately briefed both by failing to cite any authority to support either. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

7

liberty has been significantly curtailed, any intentional failure to provide him with necessary medical care could potentially result in a valid civil rights violation claim. *See Estelle*, 429 U.S. at 104. In other words, the Eighth Amendment does not categorically prohibit certain punishments for those who suffer from certain health conditions—the issue of incompetency notwithstanding (which is not at issue here). *Cf., e.g.*, *Mays v. State*, 318 S.W.3d 368, 380 (Tex. Crim. App. 2010) (holding that sentencing a mentally ill individual to death did not violate the Eighth Amendment). Rather, it simply requires what modern standards of decency suggest: the government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle*, 429 U.S. at 103. Accordingly, Cosby's argument that the Eighth Amendment proscribed this specific curtailment of liberty due to his seizure condition is unfounded, and we overrule his sole issue on appeal. *See Mays*, 318 S.W.3d at 380.

### III.    CONCLUSION

We affirm the trial court's judgments.

GINA M. BENAVIDES
Justice


Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
23rd day of December, 2024.