**Opinion issued August 28, 2025**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-23-00699-CR**

————————————

**FRANK DOUGLAS WILSON JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 182nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1835658**

---

**MEMORANDUM OPINION**

Frank Douglas Wilson Jr. was convicted of burglary of a habitation.[1]  After finding two enhancement paragraphs true, the trial court sentenced Wilson to thirty years' imprisonment.

---

[1]  *See* TEX. PENAL CODE § 30.02(a)(3).

Wilson argues on appeal that the trial court abused its discretion by admitting certain evidence, by overruling his objection to the State's allegedly improper argument during closing, and by failing to sua sponte grant a mistrial. We disagree and affirm.

## Background

On December 8, 2021, Elizabeth Manjaras was at her home when she heard someone banging loudly on the front door. Her 15-year-old daughter, L.V., and her 16-year-old son, J.V., were in their bedrooms at the time and her husband was in the living room watching a soccer game.

L.V. also heard a loud bang on the front door. Shortly thereafter, Wilson walked into her bedroom, grabbed her breasts and squeezed them for several seconds. L.V. began screaming for help and ran out of the room. She did not know Wilson and had never seen him before.

Manjaras came out of her room into the hallway and saw that the front door was wide open. But she had not opened the door. She then saw L.V. run out of her room screaming, followed by Wilson. She told L.V. to run to her brother's room and told her son not to open the door once L.V. was inside. Wilson tried to enter J.V.'s room and began banging on the door screaming "[t]hey're going to kill me. They're going to kill us."

For about thirty minutes, Manjaras and her husband tried unsuccessfully to calm Wilson down. Eventually, they were able to trick Wilson into believing that the police had arrived. And when Wilson went to the front door to check, they pushed him out and locked the door behind him. Manjaras's front door was damaged from Wilson "hit[ting] the door really hard."

After Wilson left Manjaras's house, he walked down the street to his mother's house, who lived only a few houses down from Manjaras on the same street. Wilson "thought he was locked out" and tried to enter his mother's home "right through [the front] window." In doing so, Wilson cut his arm.

After leaving his mother's house, Wilson then walked to the home of Federico Rivera, another neighbor who lived on the same street. Rivera was in his bedroom with his wife and children when he heard knocking at the front door. The knocking became harder and then Rivera heard Wilson break the living room window. Rivera testified that Wilson was screaming that he wanted to "come in." And "[h]e had his head, like, inside" the window. Rivera's daughter called the police. Rivera testified that Wilson stayed in Rivera's front yard the entire time until police arrived.

Harris County Sheriff's Office Deputy J. Suazo testified that he was called out to a burglary in progress at Rivera's address. When Deputy Suazo arrived about fifteen minutes later, he saw Wilson near Rivera's house. Deputy Suazo ordered Wilson to stop, but Wilson ignored him and ran into a neighbor's yard. Deputy

Suazo pointed his taser at Wilson and then was able to detain him. Wilson was bleeding heavily from a cut on his arm. Deputy Suazo spoke with Wilson's mother and learned that Wilson had not been taking his prescribed medication.

Harris County Sheriff's Office Deputy H. Nguyen also arrived on scene. Deputy Nguyen was assigned to the Crisis Intervention Response for Patrol unit (CIRP), whose duties include responding to calls involving behavioral health crises. Deputy Nguyen explained that a behavioral health crisis is "a disruption to a person's mindset that becomes a danger to themselves or others . . . that can be caused by behavioral issues, mental health issues, emotional issues, and drug abuse issues." Deputy Nguyen testified that, when he arrived, Wilson appeared to be afraid and responding to visual hallucinations, including believing that a man was hiding in the bushes with a gun and was trying to kill him.

As part of his "screening" process, Deputy Nguyen asked Wilson whether he had taken any drugs. Wilson told Deputy Nguyen that he had smoked marijuana earlier that day and that he had smoked methamphetamine the day before.

Deputy Nguyen testified that, based on his training and experience as a CIRP officer, individuals who have admitted that they "smoked meth" may exhibit "psychosis." He explained that "psychosis individuals" generally exhibit fear or paranoia, can experience audio or visual hallucinations, and may express anger or agitation. Deputy Nguyen testified that after observing that Wilson appeared to be

4

afraid and hallucinating, he attempted to reassure Wilson that his hallucinations were not real. Deputy Nguyen stayed with Wilson and tried to keep him calm until medical services arrived.

Wilson's mother testified that Wilson had been prescribed medication for post-traumatic stress disorder and bipolar disorder. When he is off his medication, Wilson's mother explained that he becomes "very fearful for [her] life, for his life. And he becomes very worried that someone is going to intentionally hurt [them]." She testified that in the days leading up to the burglary she had been ill with Covid-19, so she was not sure whether Wilson had taken his medication for a few days before the burglary.

Wilson also testified that he takes four kinds of medication: to help him "not hear voices" and to sleep; for depression; for his nerves and nerve pain; and for rage and sleep. Wilson testified that on the evening of the burglary, he "was seeing people through the windows messing with [him]," which is why he left his mother's house. He tried knocking on several neighbors' doors, but no one would answer. Eventually, he ended up at Manjaras's house where he "beat on their door and begged them to let [him] in their house." Wilson explained that he wanted in their house because he thought people were chasing him and trying to kill him. Wilson admitted that he entered Manjaras's house and that he "pushed [L.V.] out of the way." He testified that after he left Manjaras's house, he went to his mother's house

5

and "busted the glass." He tried to wash and bandage his cut, but "[i]t didn't work." So he went back outside and down to Rivera's house, where he stayed in Rivera's front yard until the police arrived. Wilson also admitted that he smoked marijuana on the day of the burglary and smoked methamphetamine the day before.

## Admission of Evidence

Wilson argues that the trial court abused its discretion by admitting evidence of extraneous offenses and other bad acts in violation of Texas Rules of Evidence 404(b) and 403.

### A.    Standard of Review and Applicable Law

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). "An abuse of discretion does not occur unless the trial court acts 'arbitrarily or unreasonably' or 'without reference to any guiding rules and principles.'" *State v. Lerma*, 639 S.W.3d 63, 68 (Tex. Crim. App. 2021) (quoting *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016)). We must uphold the trial court's ruling unless the determination "falls outside the zone of reasonable disagreement." *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). An evidentiary ruling will be upheld if it is correct on any theory of law applicable to the case. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

6

"Evidence of extraneous offenses is not admissible at the guilt phase of a trial to prove that a defendant committed the charged offense in conformity with a bad character." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) (citing TEX. R. EVID. 404(b)).  To be admissible, extraneous offense evidence must pass the two-prong test imposed by Texas Rules of Evidence 404(b) and 403: (1) the extraneous offense evidence must be relevant to a fact of consequence in the case apart from its tendency to prove conduct in conformity with character and (2) the probative value of the evidence must not be substantially outweighed by unfair prejudice. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005).

Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.'" TEX. R. EVID. 404(b)(1).  Such extraneous offense evidence may be admissible, however, "when it has relevance apart from character conformity." *Devoe*, 354 S.W.3d at 469. This may include evidence offered to show proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2); *Devoe*, 354 S.W.3d at 469.

## B. Forced Entry into Rivera's Home

Wilson first contends that the trial court abused its discretion by admitting Rivera's testimony that Wilson forcibly entered his home on the same night as the

charged offense at Manjaras's house. At trial, Wilson objected to Rivera's testimony on the ground that it was an "extraneous unlawful entry into someone's house, a burglary." He argued that "the door hadn't been opened to any of that" and that it was "an extraneous offense" for which Wilson had not been charged. In response, the State argued that Rivera's testimony was admissible as same-transaction contextual evidence that was necessary for the jury to understand the context in which the offense occurred. The trial court overruled Wilson's objection and allowed Rivera's testimony.

### 1. Same-Transactional Contextual Evidence

"Evidence of another crime, wrong, or act . . . may be admissible as same-transaction contextual evidence where 'several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony . . . of any one of them cannot be given without showing the others.'" *Devoe*, 354 S.W.3d at 469 (quoting *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000)). "But, under Rule 404(b), same-transaction contextual evidence is admissible only when the [charged] offense would make little or no sense without also bringing in [the same-transaction contextual] evidence." *Id.*

The purpose of admitting same-transaction contextual evidence is to put the charged offense in context. *Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993); *see also Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000)

8

("Such extraneous offenses are admissible [as same-transaction contextual evidence] to show the context in which the criminal act occurred."). "[E]vents do not occur in a vacuum, and the jury has a right to hear what occurred immediately prior to and subsequent to the commission of [the charged offense] so that it may realistically evaluate the evidence." *Wesbrook*, 29 S.W.3d at 115.

Here, we conclude that the trial court did not err in admitting Rivera's testimony as same-transaction contextual evidence. The evidence presented shows that Wilson's actions at Manjaras's house, his mother's house, and then Rivera's house were all part of a continuous criminal episode. Immediately after leaving Manjaras's house, Wilson forcibly tried to enter two houses on the same street—his mother's and then Rivera's. All three incidents occurred within about an hour's timeframe and all three houses were located on the same side of the same street, all within a quarter mile of each other. *See Devoe*, 354 S.W.3d at 462–66 (holding that evidence of extraneous offenses of three-day crime spree was admissible as same-transaction contextual evidence because defendant "did not rest between incidents" and offenses comprised one "continuing episode").

Furthermore, it was Rivera's daughter who called the police. And Deputy Suazo testified that he responded to a burglary in progress at Rivera's address and that, when he arrived, he saw Wilson in Rivera's front yard. Therefore, the testimony concerning Wilson's forced entry into Rivera's house was contextual

9

evidence that helped explain why law enforcement became involved and how Wilson was ultimately arrested. *See, e.g.*, *Swarb v. State*, 125 S.W.3d 672, 682 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd) (holding extraneous offense evidence was admissible as same-transaction contextual evidence because it provided context to show why law enforcement officers were searching for defendant).[2]

We conclude that Rivera's testimony put the charged offense into context and was necessary for the jury's understanding of the charged offense. *See Camacho*, 864 S.W.2d at 532. We therefore hold that the trial court did not abuse its discretion in admitting this evidence as same-transaction contextual evidence.[3] *See Devoe*, 354 S.W.3d at 469–70.

### 2. Rule 403

We turn next to Wilson's argument that Rivera's testimony was inadmissible under Rule 403 because the prejudicial effect of this evidence outweighed its probative value. The State contends that Wilson did not preserve his Rule 403 objection to this evidence. We agree.

---

[2]     *See also Flores v. State*, No. 01-05-01016-CR, 2007 WL 2332516, at *7 (Tex. App.—Houston [1st Dist.] Aug. 16, 2007, pet. ref'd) (mem. op., not designated for publication) (holding that extraneous offenses were contextual evidence that helped to explain why police became involved and how they ultimately arrested defendant).

[3]     Because we conclude that the evidence was properly admitted as same-transaction contextual evidence, we do not consider Wilson's argument that the evidence was not admissible under any exception to rule 404(b). *See* TEX. R. APP. P. 47.1.

Texas Rule of Evidence 403 authorizes a trial court to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, or needlessly presenting cumulative evidence. *See* TEX. R. EVID. 403. In addition to satisfying the requirements of same-transaction contextual evidence, to be admissible, extraneous evidence must also satisfy the balancing test of Rule 403. *See Swarb*, 125 S.W.3d at 681 (citing TEX. R. EVID. 403). "Generally, although a trial court must still perform a balancing test to see if the same transaction contextual evidence's probative value is substantially outweighed by its prejudicial effect, the prejudicial nature of contextual evidence rarely renders such evidence inadmissible, as long as it sets the stage for the jury's comprehension of the whole criminal transaction." *Id.*

However, to preserve a complaint for appellate review, a party must lodge a timely and specific objection and obtain an adverse ruling. *See Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003); *see also* TEX. R. APP. P. 33.1(a). Rule 403 must be specifically invoked in the trial court to preserve error under that rule. *Montgomery v. State*, 810 S.W.2d 372, 388–89 (Tex. Crim. App. 1990).

Here, Wilson only objected to Rivera's testimony on the ground that it was an extraneous offense for which Wilson had not been charged. Wilson did not object in the trial court that the evidence was more prejudicial than probative or otherwise indicate that he was objecting on Rule 403 grounds. Accordingly, that issue is not

11

properly before us to consider. *See* TEX. R. APP. P. 33.1(a); *see also Kisijara v. State*, No. 01-23-00534-CR, 2025 WL 1160688, at *7 (Tex. App.—Houston [1st Dist.] Apr. 22, 2025, no pet.) (mem. op., not designated for publication).

## C.    Recent Drug Use

Wilson next contends that the trial court abused its discretion in allowing the State to introduce testimony that Wilson admitted to using methamphetamine the day before the charged offense.  He argues that none of Rule 404(b)'s exceptions apply to this evidence.  In response, the State argues that this evidence was admissible to show motive.  We agree.

As noted above, extraneous offense evidence may be admissible under Rule 404(b) to show proof of motive. TEX. R. EVID. 404(b)(2).  Although motive is not an essential element of a crime, evidence of motive is "always admissible because it is relevant as a circumstance tending to prove the commission of an offense." *Bush v. State*, 628 S.W.2d 441, 444 (Tex. Crim. App. 1982).  The Texas Court of Criminal Appeals has defined motive as "an emotion that would provoke or lead to the commission of a criminal offense." *Rodriguez v. State*, 486 S.W.2d 355, 358 (Tex. Crim. App. 1972).[4]  Thus, evidence "that would appear to cause or produce the emotion that would in turn provoke or incite the commission of the criminal offense"

---

[4]    *See also Motive*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining motive as "[s]omething . . . that leads one to act").

12

is admissible as evidence of motive. *See id.* But to be admissible as proof of motive, the evidence "must fairly tend to raise an inference in favor of the existence of a motive on the part of the accused to commit the alleged offense for which he is on trial." *Id.*

Here, Deputy Nguyen testified that Wilson told him that he had smoked methamphetamine the day before the charged offense. Deputy Nguyen also testified that individuals who have smoked methamphetamine may exhibit fear or paranoia, as well as visual hallucinations. And he testified that Wilson appeared to be afraid and hallucinating, including seeing a man in the bushes. Wilson confirmed this during his testimony, stating that on the night of the incident he was afraid and wanted in Manjaras's house because he thought people were chasing him and trying to kill him.

Based on the above, the trial court could have reasonably concluded that Wilson's methamphetamine use could have caused or produced the emotion, i.e., fear, that in turn provoked or incited the commission of the charged offense, i.e., burglary. *See Rodriguez*, 486 S.W.2d at 358.[5] Accordingly, the trial court could have

---

[5] *See also, e.g.*, *Longoria v. State*, No. 13-15-00173-CR, 2016 WL 4045510, at *5 & n.1 (Tex. App.—Corpus Christi–Edinburg July 28, 2016, no pet.) (mem. op., not designated for publication) (stating that testimony that defendant was "maxed out on drugs, [and] not in the right state of mind" may be admissible under Rule 404(b) as evidence of defendant's motive for murder and noting that motive is mental or emotional state that provokes or leads to commission of criminal offense).

reasonably concluded that this evidence was offered not for an improper purpose but to prove motive. *See* TEX. R. EVID. 404(b). We therefore hold that the trial court did not abuse its discretion in admitting this evidence.

**Improper Closing Argument**

Wilson argues that the trial court erred by allowing the State to "argue issues related to the punishment phase of the trial during his argument on guilt or innocence." Wilson contends that the trial court should not have permitted the State to mention during closing argument that the lesser-included offenses were misdemeanors because it "urged the jury to abrogate its duty to fairly consider the decision on guilt or innocence" and instead simply convict Wilson of a felony.

Specifically, Wilson points to the following statements made by the State during its opening and rebuttal closing argument as improper:

> And I like to say that the torch of accountability that they brought to the stand, [L.V.], a 16-year-old now, the torch of accountability that she brought to the stand has been passed on to you-all. She's passed it on to you. And, so, *when you think about is this burglary of a habitation or is this a lesser misdemeanor of assault, a misdemeanor of assault does not hold Frank Wilson accountable for that*. It doesn't hold him accountable for breaking into someone's home at 10:00 something p.m. at night.
>
> . . . .
>
> And defense mentioned the lessers. Lesser of assault bodily injury or assault causing offensive contact. *That does not hold Frank Wilson accountable for what he did* when he kicked down or slammed against that door and broke it. It doesn't hold him accountable for breaking into that home. This misdemeanor assault does not hold him

14

accountable for all of his actions. And, so, when you go back to the jury room and deliberate, consider the totality of everything you've seen and heard, and I'm asking that you find Frank Wilson guilty of burglary of a habitation because that encompasses all of his criminal actions on December 8th, 2021. It wasn't just an assault. It was more than that. And, so, when you deliberate, consider that.

(Emphasis added).

The State argues that its reference to a lesser-included offense as a misdemeanor was not error because the State urged the jurors to decide guilt based on the facts rather than the amount of punishment.[6] We agree with the State.

## A. Standard of Review and Applicable Law

The purpose of closing argument is to facilitate the jury in properly analyzing the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the evidence alone, and not on any fact not admitted in evidence. *Milton v. State*, 572 S.W.3d 234, 239 (Tex. Crim. App. 2019) (internal quotations omitted). To that end, proper jury argument generally falls within one of four areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to an argument of opposing counsel, and (4) plea for law enforcement. *Id.* The focus, therefore, has always been upon encouraging the jury to decide the case on the

---

[6] The State also argues that Wilson failed to preserve this argument because he did not object to each time the prosecutor mentioned that the lesser-included offenses were misdemeanors. Although "a court of appeals may not *reverse* a judgment of conviction without first addressing any issue of error preservation," we may *affirm* on another basis. *See Meadoux v. State*, 325 S.W.3d 189, 193 n.5 (Tex. Crim. App. 2010). Because of our disposition of this issue, we do not address whether error was preserved in this instance. *See id.*

evidence in front of it rather than encouraging the jury to reach a decision based upon information outside the record. *Id.* at 240. Generally, the bounds of proper closing argument are left to the sound discretion of the trial court. *Id.*

Moreover, it is generally improper for the State to comment on punishment during the guilt-innocence stage of trial. *See McClure v. State*, 544 S.W.2d 390, 393 (Tex. Crim. App. 1976). In *McClure*, the State repeatedly, and even after objections and warnings from the trial court, argued the difference in the number of years the defendant could be confined if convicted of the lesser-included offense. *Id.* at 391–93. The court of criminal appeals held that the State's argument "was a plea to the jury to consider the amount of punishment, rather than the facts, in determining the offense for which [the defendant] should be convicted." *Id.* at 393. In so holding, the court noted that "the harm was not in informing the jury of the range of punishment, but in arguing that [the defendant] should not be convicted of manslaughter because it carried a lesser punishment, but should be convicted of murder because of the greater penalty." *Id.*

On the other hand, the State's reference merely to a lesser-included offense as a misdemeanor is not error provided it does not argue for conviction based on punishment. *See Hart v. State*, 581 S.W.2d 675, 678–79 (Tex. Crim. App. 1979) ("The harm is not in informing the jury concerning punishment, but argument for

conviction based on punishment."); *Cifuentes v. State*, 983 S.W.2d 891, 893–94 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd).

## B.    Analysis

Here, although the State mentioned during its closing argument that the lesser-included offense of assault was a misdemeanor, it did not refer to the range of punishment attached to each offense.  Nor did it argue that the difference in the level of the offenses should be used as a criterion for determining guilt. *See Cifuentes*, 983 S.W.2d at 893–94 (holding that prosecutor's reference to lesser-included offense as misdemeanor was not reversible error because prosecutor did not argue that level of offense should be used to determine guilt and did not mention punishment range).[7]

Instead, the State urged the jury to convict Wilson of the greater offense of burglary of a habitation—as opposed to the lesser-included misdemeanor assault—because the facts showed not just that he assaulted L.V., but that he did so after forcibly breaking into Manjaras's home.  We conclude that the State's argument permissibly encouraged the jury to decide the case based on the evidence and was not an improper argument for conviction based on punishment. *See Hart*, 581 S.W.2d at 678–79 (holding no error in State's argument informing jury that lesser-

---

[7]    *See also see also Esparza v. State*, 725 S.W.2d 422, 427 (Tex. App.—Houston [1st Dist.] 1987, no pet.) (holding that prosecutor's closing argument describing lesser-included offense as misdemeanor was not error because prosecutor never referred to range of punishment).

include offense was misdemeanor because State argued for jury to decide guilt on facts, not punishment).  Accordingly, we hold that the trial court did not abuse its discretion in allowing this argument from the State.

## Mistrial

Lastly, Wilson argues that the trial court erred in failing to sua sponte grant a mistrial when L.V. testified that Wilson is currently incarcerated.  Specifically, the following colloquy occurred during L.V.'s direct testimony:

> [State]: How has it affected you since then?
>
> [L.V.]: I used to—well, when I was in middle school, I used to go in the bus in the morning and in the afternoons. And then when that happened, my mom had to take me to school and drop me off and then she has to go pick me up. *Because I thought he was going to get out and he was going to come back*.
>
> [State]: I'm sorry. One more time, [L.V.].
>
> The Court: State, please approach.  Defense, approach.
>
> [State]: Yes, your Honor.
>
> (At the bench.)
>
> The Court: Before you ask that question, she said at the very end that she thought he was going to get out.
>
> [State]: What?
>
> [State]: I didn't hear you.
>
> The Court: Before you ask that question again, she said at the very end that she was afraid he was going to get out.
>
> [State]: Understood, your Honor.

18

The Court: It wasn't obvious, I mean, and it was fast and low spoken, so I don't think anyone heard. However, I don't want you to repeat the same question and get the same response.

[State]: Understood, Judge. We'll move along.

[Defense]: Your Honor, may we—that's for a punishment issue only, what he's asking the question for.

The Court: I'll sustain it.

[Defense]: Thank you.

The Court: As to how she felt afterwards.

[Defense]: Thank you.

The Court: That's sustained.

[The State]: Understood, Judge.

(Emphasis added).

Wilson did not object to this testimony. He also did not move for an instruction to disregard or for a mistrial. He argues on appeal that because this error is incurable it "is more akin to fundamental error." Thus, he contends, error is preserved, despite his failure to request any action in the trial court. The State argues that Wilson failed to preserve this issue by neither requesting an instruction to disregard nor moving for a mistrial. We agree with the State.

The court of criminal appeals has explained that while the "traditional and preferred procedure" for a party to preserve error is to (1) object in a timely manner, (2) request an instruction to disregard, and (3) move for mistrial if the instruction to disregard seems insufficient, such a sequence is not essential to preserve complaints

19

for appellate review. *See Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007). Rather, the only essential requirement to ensure preservation is a timely, specific request that is refused by the trial court. *Id.*; *see also* TEX. R. APP. P. 33.1(a).

A request for an instruction to disregard is essential to the preservation of error when such an instruction could have had the effect desired by the requesting party. *Cruz*, 225 S.W.3d at 548. The party who fails to request an instruction to disregard will have forfeited appellate review of that class of events that could have been "cured" by such an instruction. *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004).

If such an instruction would not be sufficient—that is, if the harm caused by the objectionable statements is incurable—then the defendant is entitled to a mistrial. *Cruz*, 225 S.W.3d at 548; *Young*, 137 S.W.3d at 70. In that case, a motion for a mistrial is the only essential prerequisite to presenting the complaint on appeal. *Cruz*, 225 S.W.3d at 548; *Young*, 137 S.W.3d at 70. But "[a] mistrial is the trial court's remedy for improper conduct that is 'so prejudicial that expenditure of further time and expense would be wasteful and futile.'" *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (quoting *Ladd v. State,* 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). It is an appropriate remedy only for "a narrow class of highly prejudicial and incurable errors." *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000).

The court of criminal appeals has held that an unsolicited reference to a defendant's prior confinement or incarceration can generally be cured by a prompt instruction to disregard. *See Gardner v. State*, 730 S.W.2d 675, 696–97 (Tex. Crim. App. 1987); *see also Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992) (holding that witness's "uninvited and unembellished reference to [defendant's] prior incarceration—although inadmissible—was not so inflammatory as to undermine the efficacy of the trial court's instruction to disregard"). As such, Wilson was required to request an instruction to disregard in order to preserve error. *See Young*, 137 S.W.3d at 70. He did not do so.

But even if such a reference were so prejudicial as to be incurable—as Wilson suggests L.V.'s unsolicited and unembellished statement that he "was going to get out" is[8]—he would still have been required to move for a mistrial to preserve error. *See id.* Again, he did not do so. And none of the cases cited by Wilson stand for the proposition that the trial court has a duty to sua sponte order a mistrial where there

_____

[8]    Wilson cites to three court of criminal appeals cases for the proposition that such an error is incurable by instruction. *See Williams v. State*, 643 S.W.2d 136, 138 (Tex. Crim. App. 1982); *Salinas v. State*, 175 S.W.2d 253, 254 (Tex. Crim. App. 1943); *Ulmer v. State*, 292 S.W. 245, 246 (Tex. Crim. App. 1927). But the court in *Gardner* distinguished these cases. *See Gardner v. State*, 730 S.W.2d 675, 696 n.12 (Tex. Crim. App. 1987). And our Court has declined to follow them, finding the court of criminal appeals' decision in *Gardner* (and others) more analogous in cases—like this one—where the testimony at issue "was unembellished, was unresponsive, and was not calculated to inflame the minds of the jury." *See Hughes v. State*, 962 S.W.2d 89, 92 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd).

has been no objection, no request for an instruction to disregard, and no motion for mistrial by the defendant.

Accordingly, because Wilson neither requested an instruction to disregard nor moved for a mistrial, we hold that Wilson also failed to preserve this issue for our review.

## Conclusion

We affirm the trial court's judgment of conviction in all things.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Caughey and Johnson.

Do not publish. TEX. R. APP. P. 47.2(b).